UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN PIERCE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARTFORD LIFE & ACCIDENT )<br>INSURANCE COMPANY, )<br>)<br>Defendant. ) | No. 07:21-cv-00052 |

## COMPLAINT

Now comes the Plaintiff, BRIAN PIERCE ("Plaintiff"), by the undersigned counsel, and complaining against the Defendant, HARTFORD LIFE & ACCIDENT INSURANCE COMPANY ("Hartford" or "Defendant"), states as follows:

### NATURE OF ACTION

1. This case seeks the payment of long-term disability ("LTD") benefits due under a group disability benefits insurance policy, policy number 402357 ("Policy") (for which a true and correct copy of the certificate of insurance produced during the claims process is attached hereto and by that reference incorporated herein as "Exhibit A"). The Policy is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* This action is specifically brought as a claim for benefits under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees and costs under ERISA § 502(g) (29 U.S.C. § 1132(g)).

### JURISDICTION

2. Jurisdiction of this Court is based on ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)). Those provisions give the district court jurisdiction to hear civil actions

brought to recover benefits due under the terms of employee welfare benefit plans, which, in this case, involves group disability insurance policy underwritten and administered by Hartford for the benefit of employees of Constellation Energy Nuclear Group, LLC, an Exelon Company ("Constellation Energy").

3. This action may also be brought before the district court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

4. The ERISA statute provides, at ERISA § 503 (29 U.S.C. § 1133), a mechanism for internal appeals of benefit denials and terminations. Those avenues of appeal have been exhausted.

**VENUE**

5. Venue is proper in the Eastern District of North Carolina, Southern Division pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Plaintiff resides in this District.

6. Venue is also proper in the Eastern District of North Carolina, Southern Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District.

**PARTIES**

7. Plaintiff, born in 1975, is a resident of Jacksonville, North Carolina, located in Onslow County, North Carolina. Incident to his employment with Constellation Energy, Plaintiff received coverage under the Policy as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)).

8. The Policy constitutes an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)). The policyholder is the "Trustee of the Group Voluntary Life and

Disability Insurance Trust," of which Constellation Energy is a participating employer. This claim relates to LTD benefits due under the foregoing Policy.

9. Hartford is the underwriter and administrator of the Policy, and at all times relevant hereto, was doing business within the Eastern District of North Carolina, Southern Division.

## RELEVANT POLICY PROVISIONS

10. Plaintiff is eligible to receive LTD benefits under the Policy starting on February 14, 2014, following his satisfaction of the 26-week elimination period, until age 65, which would be reached in April 2040. Ex. A, at 9-10. Plaintiff is entitled to receive LTD benefits in the amount of $2,992.00 per month, calculated at the rate of 60% of his monthly pre-disability earnings of $4,986.67. Ex. A, at 9. The other provisions of the Policy relevant to Plaintiff's claim for LTD benefits provide as follows:

## BENEFITS

**Disability Benefit:** *What are my Disability Benefits under The Policy?*
We will pay You a Monthly Benefit if You:
 1) become Disabled while insured under The Policy;
 2) are Disabled throughout the Elimination Period;
 3) remain Disabled beyond the Elimination Period; and
 4) submit Proof of Loss to Us.
Benefits accrue as of the first day after the Elimination Period and are paid monthly. However, benefits will not exceed the Maximum Duration of Benefits.

Ex. A, at 14.

## DEFINITIONS

**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
 1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
 2) the Maximum Monthly Benefit…

3

> **Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
>   1) Your Occupation during the Elimination Period;
>   2) Your Occupation, for the 24 months following the Elimination Period, and
>   3) after that, Any Occupation.
>
> Your Disability must be the result of:
>   1) accidental bodily injury;
>   2) Sickness;
>   3) Mental Illness;
>   4) Substance Abuse; or
>   5) pregnancy.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

Ex. A, at 22.

## STATEMENT OF FACTS

11. Plaintiff was employed by Constellation Energy as a full-time Auxiliary Operator, which is a skilled occupation performed at the medium exertional level pursuant to the United States Department of Labor Dictionary of Occupational Titles ("DOT").

12. A couple of years into his employment with Constellation Energy, Plaintiff was forced to cease working effective August 16, 2013 due to pulmonary sarcoidosis and resulting symptomology including fatigue, shortness of breath, and cognitive difficulties. Plaintiff has also been diagnosed with obstructive sleep apnea, depression, and anxiety, amongst other things.

13. Plaintiff has not returned to work in any capacity since he ceased working on August 16, 2013.

14. Subsequent to ceasing his employment, Plaintiff submitted a claim for short-term disability ("STD") benefits, which was approved. Plaintiff received STD benefits through February 14, 2014, the date he satisfied the maximum STD benefit period.

15. After that, Plaintiff submitted a claim for LTD benefits, which Defendant approved on March 12, 2014 under the "own occupation" standard. Plaintiff started collecting LTD benefits on February 14, 2014, following his satisfaction of the Policy's 26-week elimination period.

16. Approximately two years later, on February 19, 2016, Hartford informed Plaintiff that it had "conducted a thorough review of all the medical and vocational information" in his file. Based on that review, Hartford determined that Plaintiff continued to meet the Policy's definition of disability, thereby qualifying him for continued LTD benefits under the "any occupation" standard that took effect on February 15, 2016.

17. Hartford's disability determination was based on a medical review performed by Akshay Sood, M.D., board certified in internal medicine, on February 5, 2016. Dr. Sood found that Plaintiff only had a part-time work capacity due to his sarcoidosis and extreme fatigue.

18. Hartford also had an employability analysis prepared by a rehabilitation case manager on February 15, 2016, which determined that were no occupations Plaintiff could perform "due to part time work restrictions and additional rest breaks outside of the standard breaks allowed by employers."

19. One year later, on March 31, 2017, Hartford mandated that Plaintiff undergo an independent medical examination ("IME") with a physician of its choice. Todd McCune, M.D., board certified in occupational medicine, performed the evaluation. Similar to Dr. Sood, Dr. McCune concluded that Plaintiff could only work up to four hours per day.

20. A couple of years after that, and despite the absence of any material improvement in Plaintiff's medical condition, on January 23, 2018, Defendant notified Plaintiff that it no longer deemed him disabled and was terminating his LTD benefits effective January 16, 2018.

For the first time, Hartford alleged that Plaintiff was "not continuously unable to engage in Your Occupation or Any Occupation."

21. Defendant's decision to terminate Plaintiff's benefits was based on the results of a medical review performed by Sherry Leitch, M.D., board certified in neurology, on December 21, 2017. Dr. Leitch never examined Plaintiff, and only reviewed his neurological symptoms. Dr. Leitch opined that because there was no neurologic involvement of the sarcoid, Plaintiff "is without restrictions and limitations from a neurologic perspective" only.

22. Hartford then had another employability analysis performed by a return to work case manager on January 5, 2018, which was based exclusively on Dr. Leitch's file review and none of the other medical or vocational evidence of file. The analysis also gave "no consideration for any psychiatric or cognitive impairment," but concluded that there were occupations Plaintiff "possesses the capabilities to perform."

23. On July 21, 2018, Plaintiff appealed Defendant's decision to terminate his LTD benefits through the undersigned counsel, and submitted additional medical evidence further supporting his ongoing total disability.

24. Approximately six weeks later, on September 4, 2018, Hartford notified Plaintiff that it was approving his appeal and re-instating his LTD benefits effective January 16, 2018.

25. Defendant's decision to overturn its prior decision and re-instate Plaintiff's LTD benefits was based on another medical review conducted by Matthew Chan, M.D., board certified in occupational medicine, on August 27, 2018. Consistent with the opinions of all of Plaintiff's treating doctors and Hartford's prior consulting physicians with the relevant expertise, Dr. Chan concluded that Plaintiff only had a part-time work capacity "up to 4 hours per day and 20 hours per week." In support thereof, Dr. Chan explained:

> The claimant has a very unfortunate systemic disease, and at a young age already has significantly impaired pulmonary function, along with other manifestations of the disease including psychiatric/cognitive symptoms. He has well-documented evidence supporting/confirming the diagnosis including positive laboratory testing with calcium level, ACE [angiotensin-converting enzyme] level, biopsy, as well as imaging findings of the disease.

26. At the same time, Hartford had a file review performed by Greer Richardson, M.D., board certified in psychiatry. Although Dr. Richardson concluded that Plaintiff was not limited in occupational functioning from a psychiatric perspective, he conferred with Dr. Chan and agreed with his assessment that Plaintiff had a "part-time restriction, 20 hours a week, 4 hours a day." Dr. Richardson reasoned that Plaintiff had "a longstanding history of sarcoidosis [that was] limiting, with chronic fatigue, shortness of breath, as well as hypoxemia and dyspnea. It is clear the claimant is functionally limited."

27. A couple of days later, on August 29, 2018, Hartford also had an addendum to its January 5, 2018 employability analysis performed. The vocational case manager concluded that in light of Plaintiff's "restrictions, part time functionality and high earnings potential, there are no occupations identified within his functional capabilities and that meet the high hourly earnings potential…therefore employability is limited."

28. Nevertheless, just a year and a half later, on March 11, 2020, Hartford notified Plaintiff that it had once again determined he was not totally disabled and would be terminating his LTD benefits effective March 12, 2020. In support of its decision, Hartford alleged that Plaintiff had "no restrictions and limitations," and "there are a number of occupations for which you are qualified that are within your physical capabilities."

29. That time, Defendant's termination of benefits was based on covert surveillance footage it had obtained over four days. Importantly, though, Plaintiff was only seen for less than two and a half hours in total. The surveillance footage also did not depict Plaintiff engaging in

7

Case 7:21-cv-00052-BO   Document 1   Filed 03/24/21   Page 7 of 11

any activities that were inconsistent with his self-reported functional abilities or activities, or demonstrative of his ability to sustain full-time work.

30. In addition, Harford had another file review performed by Allen Blaivas, D.O., board certified in pulmonary disease, sleep medicine, critical care medicine, and internal medicine, on February 24, 2020. Dr. Blaivas never examined Plaintiff, yet concluded, without much further assessment, that "[b]ased on the totality of the evidence, including the video surveillance, there is no diagnostic support for restrictions and limitation[s]."

31. Finally, Hartford had yet another employability analysis performed on March 10, 2020, which was based exclusively on its unreliable file review from February 24, 2020, and none of the other medical or vocational evidence submitted by Plaintiff's treating providers and collected by Hartford over the prior six and a half years. Contrary to Hartford's previous employability assessments, the vocational case manager alleged to have found representative occupations Plaintiff could perform.

32. On September 15, 2020, Plaintiff once again appealed Defendant's decision to terminate his LTD benefits through the undersigned counsel, and submitted additional medical evidence further supporting his ongoing total disability. That evidence included, amongst other things, three functional capacity assessment questionnaires completed by Plaintiff's treating physicians, which all consistently documented his continued diagnosis of sarcoidosis, sub-sedentary functional capacity, and inability to perform any work on a full-time basis.

33. During Hartford's review of Plaintiff's appeal, it retained Diego Maselli, M.D., board certified in internal, pulmonary, and critical care medicine, to perform another medical assessment on December 30, 2020. That "review did not involve an evaluation of" Plaintiff. Dr. Maselli acknowledged that Plaintiff's sarcoidosis had been confirmed by bronchoscopy and

8

Case 7:21-cv-00052-BO   Document 1   Filed 03/24/21   Page 8 of 11

biopsies, but still claimed that "[f]rom a pulmonary perspective, taking into consideration his physical exam findings, pulmonary function testing and radiographic studies, the claimant has no restrictions and limitations."

34. One of Plaintiff's treating physicians subsequently responded to Dr. Maselli's review and disputed his findings. Plaintiff's counsel also submitted medical literature regarding the well-documented association of severe fatigue with sarcoidosis, but Dr. Maselli refused to alter his opinion because "no new objective information or testing ha[d] been submitted."

35. As a result, on February 3, 2021, Defendant notified Plaintiff that it was upholding its prior termination of his LTD benefits. Defendant's decision was based exclusively on Dr. Maselli's biased and deficient file review in the face of all the other medical and vocational evidence of file, including Defendant's own consulting physicians' prior medical assessments. Defendant's appeal review was cursory, overlooked critical evidence, and structured to cherry-pick only the evidence that favored the termination of benefits, while ignoring the overwhelming contrary evidence. Defendant's claim appeal process was also biased and self-serving, and placed financial considerations ahead of an objective and fair claim evaluation. Defendant thus failed to meet its fiduciary obligations under ERISA to ensure an accurate claim decision; apply "higher-than-marketplace quality standards," as required by the United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350 (2008); and provide Plaintiff with a "full and fair review" pursuant to ERISA § 503 (29 U.S.C. § 1133) and 29 C.F.R. § 2560.503-1.

36. All required pre-litigation appeals seeking the payment of LTD benefits have now been exhausted. Therefore, this matter is ripe for judicial review.

37. In sum, the evidence submitted to Defendant establishes that Plaintiff has been continuously unable to return to work since August 16, 2013, and has thus met and continues to meet the Policy's definition of disability since that date due to his sarcoidosis and related symptomology. Plaintiff is therefore entitled to receive all LTD benefits due from March 12, 2020, the date Defendant terminated those benefits, to the present with interest. Such LTD benefits should continue under the terms of the Policy for so long as Plaintiff continues to meet the Policy's terms and conditions for the receipt of those benefits.

38. Hartford's adverse decision on Plaintiff's claim and appeal is wrong and unreasonable; is not based on substantial evidence; and is not the result of a deliberate, principled reasoning process.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant, and that the Court order Defendant to pay all past due LTD benefits to Plaintiff in an amount equal to the contractual amount of benefits to which he is entitled pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B));

B. That the Court order Defendant to pay Plaintiff prejudgment interest on all LTD benefits that have accrued prior to the date of judgment at an appropriate rate pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) or ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3));

C. That the Court order Defendant to continue to pay Plaintiff LTD benefits for so long as he continues to meet the Policy's terms and conditions;

D. That the Court award Plaintiff attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

E. That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which he may be entitled.

Respectfully submitted, this the 24th day of March, 2021

/s/ Charles McB. Sasser
Charles McB. Sasser
The Sasser Law Firm, P.A.
1011 East Morehead Street
Charlotte, North Carolina 28204
704-342-4200
704-342-0798 (facsimile)
msasser@sasserlawoffice.com
NC State Bar No.: 10027
Local Civil Rule 83.1(d) Counsel for Plaintiff

/s/ Marie E. Casciari
Marie E. Casciari
DeBofsky Sherman Casciari Reynolds P.C.
150 North Wacker Drive, Suite 1925
Chicago, Illinois 60606
312-561-4040
312-929-0309 (facsimile)
mcasciari@debofsky.com
IL State Bar No: 6305597
Counsel for Plaintiff